NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | |
|---|---|
| In the Interest of Le.H., a child, | |
| _____ | |
| N.H. and C.H., | |
| Petitioners, | |
| v. | Case No. 2D15-5322 |
| DEPARTMENT OF CHILDREN AND FAMILIES and the GUARDIAN AD LITEM PROGRAM, | |
| Respondents. | |
| _____ | |
| In the Interest of J.H., La.H., and Le.H., children, | |
| _____ | |
| GUARDIAN AD LITEM PROGRAM, | |
| Petitioner, | |
| v. | Case No. 2D16-178 |
| C.H., N.H., and DEPARTMENT OF CHILDREN AND FAMILIES, | CONSOLIDATED |
| Respondents. | |
| _____ | |

Opinion filed May 20, 2016.

Petitions for Writ of Certiorari to the Circuit
Court for the Twentieth Judicial Circuit for
Lee County; Lee A. Schreiber, Judge.

Michael Mummert of The Faga Law Group,
P.A., Naples, for Petitioners C.H. and
N.H.

Laura J. Lee, Sanford, for Petitioner
Guardian ad Litem Program.

Meredith K. Hall, Bradenton, for
Respondent Department of Children and
Families.

LaROSE, Judge.

N.H. and C.H., the parents of three young children, and the Guardian ad

Litem Program (GAL) have filed petitions for a writ of certiorari to review an order

sheltering Le.H., born in August 2015, but refusing to shelter his siblings. The children

who were not sheltered are La.H., Le.H.'s identical twin, and J.H., a nonverbal two-year-

old. We have jurisdiction. See Fla. R. App. P. 9.030(b)(2)(A); 9.100(c).

We deny the parents' petition without further comment. However, the GAL

argues that because the trial court found probable cause to shelter Le.H. based on the

parents' alleged physical abuse of that infant, the trial court departed from the essential

requirements of law when it failed to shelter his similarly situated siblings. We agree.

Thus, we grant the GAL's petition and quash that portion of the order declining to shelter

La.H. and J.H.

When Le.H. was only two months old, the mother brought him to the

hospital emergency room because of fever and congestion. A chest x-ray of the infant

revealed five fractured ribs at different stages of healing. A full x-ray and CT scan

revealed no additional injuries. A Child Protective Team investigator (CPI), who was

2

called to the hospital, questioned the mother about the child's injuries. The mother denied abusing Le.H. She also disclaimed knowledge of any incidents in which Le.H. could have been injured. The CPI later examined the two siblings and found no injuries or signs of abuse. Only the mother, father, and maternal grandmother cared for the three children.

At an initial shelter hearing, the CPI testified about Le.H.'s injuries and the potential harm posed to his siblings by the caregivers. The CPI testified that because of the severity of Le.H.'s injuries and the fact that the two other siblings cannot be expected to protect themselves at their young ages, the Child Protective Team could not ensure the children's safety if they remained with the parents. The mother, the father, and the maternal grandmother could not explain Le.H.'s injuries. The mother denied intentionally harming the infant. At the conclusion of the initial hearing, the duty judge—who was not the judge who entered the shelter order on review—found no probable cause to shelter any of the children. He observed that the "profile of the parents" was "completely inconsistent" with abuse or child neglect. The trial court noted that the parents took their children to medical appointments, were regularly employed, and had no history of abuse. However, the trial court stated that Le.H.'s unexplained injuries required further investigation.

The GAL filed an amended shelter petition a few weeks later. At a hearing on the amended petition, witnesses for the Department of Children and Families (DCF) explained that the CPI's findings and recommendations remained the same, even though additional x-rays and scans revealed no other injuries to Le.H. However, a physician working with the CPI opined that Le.H.'s rib fractures were indicative of child abuse. The trial court found probable cause to shelter Le.H. based on the severe

injuries. But, finding no signs of physical abuse to the other children, the trial court refused to shelter them. The trial court concluded that they were not at risk of potential harm. The trial court's failure to find probable cause to shelter La.H. and J.H. departed from the essential requirements of law and caused irreparable harm that cannot be remedied on appeal. See J.C. v. Dep't of Children & Family Servs., 83 So. 3d 883, 887 (Fla. 2d DCA 2012). "[A] petitioner can demonstrate a departure from the essential requirements of the law by showing that 'the trial court made an error so serious that it amounts to a miscarriage of justice.' " Id. at 888 (quoting K.G. v. Dep't of Children & Families, 66 So. 3d 366, 368 (Fla. 1st DCA 2011)).

Under section 39.402(1)(a), Florida Statutes (2015), the trial court may shelter a child if probable cause exists to believe that the child has been abused, neglected, abandoned, or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment. The trial court must apply the same standard used for an arrest warrant when determining whether there is probable cause to shelter a child. Fla. R. Juv. P. 8.305(b)(3). Although Florida courts recognize the importance of a parent's right to enjoy custody of his or her children, our courts have authority to do all things reasonably necessary to protect children within their jurisdiction. See § 39.001(1)(b)(1), Fla. Stat. (2015). With these concerns in mind, a trial court should remove a child from the parents only "when his or her welfare cannot be adequately safeguarded without such removal." § 39.001(1)(f).

After finding probable cause to shelter Le.H., the trial court effectively failed to apply the proper probable cause standard in deciding whether to shelter Le.H.'s two siblings. Contrary to the trial court's belief, the connection between the unexplained abuse of a child and the substantial risk of significant harm to a sibling can warrant the

- 4 -

removal of both children, even though one child has yet to be abused. The case of Department of Children and Family Services v. K.D., 88 So. 3d 977 (Fla. 2d DCA 2012), superseded on other grounds by § 39.806(1)(f), Fla. Stat. (2014), where we reviewed an order terminating parental rights to identical twins, is instructive. In K.D., one twin suffered fractures to the left leg, skull, and ribs during his first seventeen days of life. Id. at 980. We recognize that K.D. is a termination of parental rights case subject to a higher standard of proof and other factors not involved in a shelter hearing. Compare § 39.402 (shelter placement), with § 39.806 (termination of parental rights); see also Dep't of Children & Families v. H.M.R., 161 So. 3d 447, 479 (Fla. 5th DCA 2014) (comparing termination and shelter standards and relying on termination cases involving past abuse of a sibling to shelter the other sibling). Important, however, is the fact that, as in this case, an infant was severely injured and no adult caregiver could explain the injuries. Although the other twin had suffered no abuse, he was identically situated to his injured twin and equally susceptible to the same unexplained abuse. K.D., 88 So. 3d at 986. As applied to circumstances where, as here, the shelter of siblings is sought based on the abuse of only one of them, the legal burden is similar to, but less stringent than, the burden in the termination of parental rights context. See H.M.R., 161 So. 3d at 479 ("At this stage, [the GAL] is not required to produce clear and convincing evidence to terminate . . . parental rights, but merely is required to show the probability that [the sibling] is in imminent danger . . . ."); see also § 39.402(8)(d)(1), (h)(3) (stating burden in shelter context). As in K.D., the parents' inability, here, to explain Le.H.'s injuries is particularly disconcerting. A physician has testified that Le.H.'s injuries are the result of abuse. The DCF and the GAL certainly have a reasonable concern for the safety and welfare of the equally susceptible siblings. There was evidence sufficient to meet the

probable cause requirements of section 39.402 based on testimony of the CPI that, unfortunately, there was no adequate way to safeguard the children without sheltering them from their parents. See § 39.001(1)(f). The record reflects the needed probable cause to shelter Le.H.'s two siblings. See § 39.402(h)(4). This is supported by the trial court's specific findings in regard to Le.H.

By requiring evidence of actual physical harm to the siblings in order to shelter them, the trial court in effect failed to apply the probable cause standard required to determine whether those siblings should have been sheltered. This constituted a departure from the essential requirements of law that cannot be remedied on appeal. Accordingly, we grant the GAL's petition for writ of certiorari and quash the shelter order to the extent that it failed to shelter La.H. and J.H.

Petition granted in case number 2D16-178; petition denied in case number 2D15-5322.


CASANUEVA and SALARIO, JJ., Concur.